**HARTFORD FIRE INSURANCE COMPANY GROUP**

v.

**William Mark BEELER.**

**Civ. A. No. 5243.**

United States District Court
E. D. Tennessee, N. D.

July 8, 1965.

H. H. McCampbell, Jr., Knoxville, Tenn., for plaintiff.

Sidney Gilreath, Gilreath & Brown, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This case arose under the Workmen's Compensation Law of Tennessee by reason of an accident sustained by William Mark Beeler on March 16, 1964 when he slipped and fell in the performance of his duties for the Cartwright Construction Company and sustained a herniated disk as a result of the accident, for which he was hospitalized two weeks in March, 1964, later re-admitted to the hospital and later again re-admitted. In the course of this hospital procedure he underwent a laminectomy for the removal of his disk at the L–4 region. He never

recovered from this operation although his doctor advised him that he thought he would be able to return to work about July 20, 1964.

Sometime in August, the plaintiff picked some peaches and during that time he had severe pains in his back as a result of which he was again examined by Dr. Wedekind who advised him not to return to work for another 60 days at least.

On September 30, while driving some cows, one of them got out of line and plaintiff walked forward at a fast gait a short distance when he felt a severe pain in his back, falling to the ground and found that his limbs were paralyzed. Plaintiff was again hospitalized and again operated on at which time the doctor removed the disk from the L–5 region.

Doctor Wedekind was of the opinion that there was a causal relation between the L–5 incident and the L–4 incident. It was the view of Dr. Wedekind that the back was in a weakened condition in the L–4 and L–5 region as a result of the first accident and that whatever occurred at the time he drove the cows and at the time he picked the peaches was causally related to the first accident. That was also the view of Dr. Marsie.

Doctor Wedekind is a trained orthopedist while Dr. Marsie is a general practitioner and family physician of plaintiff. The latter was also the doctor for plaintiff's employer at the time of plaintiff's accident.

It is the theory of plaintiff that he is entitled to workmen's compensation benefits based upon 100 per cent permanent total disability. It is the theory of the defendant that plaintiff is entitled to some benefits as the result of the L–4 laminectomy on May 7, 1964, but contends, however, that on May 30, 1964 plaintiff was in an automobile wreck and this automobile wreck may have contributed to some extent to the back injury. The proof is that plaintiff's back was not injured in the automobile accident.

Defendant contends further that on July 17th plaintiff was examined by Dr. Wedekind and was released to return to work on July 20, and the next time that Dr. Wedekind saw plaintiff was around August 17th at which time he reported that while reaching up to pick peaches his back hurt him and he had not gone back to work as released. The next time Dr. Wedekind saw him was on September 30 when plaintiff was brought by ambulance to the hospital in bad shape. The history given at that time was that he was driving cows from a field on one side of the road to a field on the other. One of the cows bolted, or plaintiff thought it was going to bolt, and plaintiff moved around to head the cow off and something happened to his back and he fell to the ground.

On medical examination it was found that plaintiff had another ruptured disk at L–5 interspace and another laminectomy was performed.

It is the defendant's theory, as the Court understands it, that the peach incident and the cow incident were intervening causes whch prevent recovery for any disability that may have been sustained or aggravated in these incidents.

The rule in Tennessee is set forth in the case of Jones v. Huey, 210 Tenn. 162, 166, 357 S.W.2d 47, 48:

> " * * * that 'a subsequent injury' must be 'related in some way to the primary injury, the rules that come into play are essentially based upon the common-law concepts of "direct and natural results," and of claimant's own negligence as an independent intervening cause.' "

Again on page 166, 357 S.W.2d on page 48:

> "This subsequent injury 'is compensable if it is the direct and natural result of a compensable primary injury. But if the subsequent injury is attributable to claimant's own negligence or fault, the chain of causation is broken, even if the primary injury may have contributed in part to the occurrence of the subsequent injury.' * * * "

The Court dealt with the same principle in the case of Mallette v. Mercury Outboard Supply Co., 204 Tenn. 438, 321 S.W.2d 816.

 The medical proof in this case is that there was a causal relationship between the cow incident and the original injury. Dr. Wedekind testified on that question and gave as his opinion that there was a causal relationship between the original injury and that which occurred as a result of the cow incident. He explained that the back was in a weakened condition on account of the injury sustained in the previous accident and that this entered into the disability resulting from the cow incident.

The Court would have to find if anything occurred to the plaintiff while picking peaches that it was related to the disability arising out of the first accident as there is nothing in the record to indicate that plaintiff met with an accident while picking peaches.

Doctor Wedekind stated that in his opinion plaintiff's impairment was 10 to 20 per cent as the result of the original accident which occurred on March 16, 1964. His subsequent testimony indicated that he was not physically able to do work which involved lifting of any consequence or bending, that he was not able to return to the work that he was doing as a carpenter at the time of the original accident. He also testified that his disability was 100 per cent from engaging in heavy work on account of the disability sustained in the first accident; and that plaintiff was 100 per cent disabled as a result of the L–5 herniated disk.

Doctor Marsie was of the opinion that plaintiff could not because of his disk troubles return to carpenter work involving lifting or stooping.

■ A most certain fact in this case is that Mr. Beeler has had a long, rocky and painful road to travel with his back since his accident of March 16, 1964. The question for the Court is what percentage of disability should be fixed which would be fair to him and be fair to the insurance carrier of his employer. It is true that Mr. Beeler has a bad back at this time but in the opinion of the Court he is not 100 per cent disabled. He is a young man 27 years of age, and in the opinion of the Court, based upon his testimony here today, is a truthful man. If the Court should fix his disability at 100 per cent it might be an injustice to him. He does not want to go through this life feeling that he is permanently and totally disabled for a substantial gainful occupation. It is very difficult to fix the percentage of disability with precision. It is a matter of judgment. The Court fixes the percentage of disability at 80 per cent.